NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO J.T.

No. 1 CA-JV 25-0192

FILED 06-05-2026

Appeal from the Superior Court in Maricopa County
No. JD41930
No. JS22542
The Honorable Keith A. Miller, Judge

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant Mother*

Arizona Attorney General's Office, Tucson
By Marika J. Hodge
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Veronika Fabian delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Chief Judge Randall M. Howe joined.

---

F A B I A N, Judge:

¶1        Martina T. ("Mother") appeals from the juvenile court's order terminating her parental rights to J.T. ("Child"). She argues the Department of Child Safety ("DCS") did not make diligent reunification efforts and the termination of her parental rights was not in Child's best interests. Because Mother has not shown the juvenile court erred, this Court affirms.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2        This Court views the record "in the light most favorable to upholding the juvenile court's findings." *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 479 ¶ 32 (2023).

¶3        Mother is the biological parent of Child, born in September 2014.[1] In May 2022, DCS received a report that Mother, while intoxicated, had acted aggressively towards Child and the maternal grandmother ("Grandmother"). During a subsequent interview, Grandmother described Mother as having untreated mental health problems, which had resulted in prior domestic violence incidents.

¶4        When DCS interviewed Mother, she was unable to hold a coherent conversation and denied any mental illness. However, she did acknowledge engaging in domestic violence towards Grandmother. The investigator determined Mother's untreated mental health and substance abuse presented a threat to Child's safety. DCS took temporary custody of Child and filed a dependency petition.

¶5        The juvenile court found Child dependent as to Mother, concluding that Mother behaved erratically, failed to acknowledge any need for mental health treatment, and had mental health difficulties that

---

[1] The juvenile court terminated the father's parental rights pursuant to A.R.S. § 8-533(B)(9), and he is not a part of this appeal.

may be aggravated by alcohol abuse. The court adopted a family reunification case plan.

¶6        During the dependency, DCS offered Mother reunification services including case management, supervised visitation, substance abuse treatment, drug testing, a psychological evaluation, individual counseling, and parenting and domestic violence classes through Family Connections. Because Mother denied any substance abuse or mental health problems and refused to drug test, she was unable to be assessed for treatment.

¶7        Mother's visits with Child were supervised for most of the dependency because Mother sometimes threatened the supervisors, made inappropriate comments, or indicated she would abscond with Child.

¶8        In February 2024, Mother went to the emergency room for suicidal thoughts. She denied drinking, but her blood alcohol concentration was 0.287. While hospitalized, she acknowledged a history of alcohol abuse and a high tolerance for alcohol. In March 2024, she was discharged and admitted into residential treatment, where she remained until June 2024.

¶9        After leaving residential treatment, Mother began to engage with services and make progress. She started individual counseling and online parenting, anger management, and domestic violence classes. In November and December 2024, Mother began unsupervised and then overnight visits.

¶10        During Child's first overnight visit, a conflict arose when Mother insisted on washing Child's hair in the shower. DCS slowed the transition and determined the family would benefit from family counseling regarding age-appropriate boundaries.

¶11        Before family counseling could occur, Mother was arrested for assaulting a neighbor and then placed in court-ordered treatment. After this incident, DCS stopped Child's unsupervised visits with Mother, ending the transition plan. In April 2025, DCS held a team decision-making meeting and decided to request a change in case plan to termination and adoption. Although Child was initially very upset, after therapy, he understood DCS's concerns for his safety and did not continue to show emotional distress.

¶12        The juvenile court granted DCS's request to change the case plan to termination and adoption. DCS then moved to terminate Mother's

parental rights based on chronic substance abuse, mental illness, and 15-months out-of-home placement. A.R.S. § 8-533(B)(3), (8)(c).

¶13        At the termination hearing, the case manager testified Mother had not remedied the circumstances that kept Child in DCS custody for three years—specifically, her failure to demonstrate sobriety and stable mental health. She also testified termination would provide Child permanency and stability through adoption, but noted Child did not want Mother's rights terminated. A psychologist who had evaluated Mother testified that her lack of recognition of her behavioral or substance abuse problems was the fundamental issue, and that her inability to stop drinking despite her sincere desire to reunify met the definition of alcohol abuse.

¶14        The juvenile court terminated Mother's parental rights on chronic substance abuse and the 15-months out-of-home placement grounds. It found that DCS made reasonable and diligent efforts to provide Mother with appropriate reunification services. The court concluded that terminating Mother's parental rights was in Child's best interests despite the bond between them because it would provide permanency and stability through adoption.

¶15        Mother timely appealed. This Court has jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1) and -2101(A)(1), and Arizona Juvenile Court Rule of Procedure 601(a).

## DISCUSSION

¶16        Mother challenges the juvenile court's findings that DCS made diligent efforts to provide her with appropriate reunification services and that the termination of her parental rights was in Child's best interests.

¶17        "Parents have a fundamental right, protected by the Fourteenth Amendment, to the 'care, custody, and control of their children.'" *Borja v. Borja*, 254 Ariz. 309, 313 ¶ 8 (App. 2022) (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). But that right is not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248 ¶¶ 11–12 (2000). To terminate a parent-child relationship, the juvenile court must find that: 1) a statutory ground for termination under A.R.S. § 8-533(B) exists by clear and convincing evidence and 2) termination is in the child's best interests by a preponderance of the evidence. *Brionna J.*, 255 Ariz. at 477 ¶ 20.

¶18        When reviewing a termination order, this Court accepts the juvenile court's factual findings "if reasonable evidence and inferences support them." *Id.* at 478 ¶ 30 (quoting *Jessie D. v. Dep't of Child Safety*, 251

Ariz. 574, 580 ¶ 10 (2021)). The juvenile court's legal conclusions regarding the statutory ground for termination will be affirmed unless they are clearly erroneous. *Id.* at 478-79 ¶ 31. This Court "will affirm a termination order unless the juvenile court abuses its discretion or the court's findings are not supported by reasonable evidence." *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 474 ¶ 14 (2022). This Court will not reweigh the evidence or reevaluate the credibility of witnesses. *Maria G. v. Dep't of Child Safety*, 253 Ariz. 364, 366 ¶ 8 (App. 2022).

## I.     DCS Made Diligent Efforts to Provide Reunification Services.

**¶19**        Mother argues the juvenile court erred in finding DCS made diligent efforts at reunification services because DCS identified family counseling as appropriate but never provided her with the time and opportunity to engage in family counseling.

**¶20**        Under the 15-months out-of-home placement ground, DCS must prove by clear and convincing evidence it made "a diligent effort to provide appropriate reunification services." A.R.S. § 8-533(B)(8); *see Brionna J.*, 255 Ariz. at 477 ¶ 20. Mother concedes the remaining elements of the statutory ground by not challenging them, including that Child remained in an out-of-home placement for more than 15 months, that Mother was unable to remedy the circumstances causing his out-of-home placement, and that she would be unable to exercise proper and effective parental care and control in the near future. *See In re Z.L.*, 256 Ariz. 138, 143 ¶ 19 (App. 2023); A.R.S. § 8-533(B)(8)(c).

**¶21**        To satisfy the diligent efforts factor, DCS must "identify the conditions causing the child's out-of-home placement, provide services that have a reasonable prospect of success to remedy the circumstances as they arise throughout the time-in-care period, maintain consistent contact with the parent, and make reasonable efforts to assist the parent in areas where compliance proves difficult." *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 23 ¶ 50 (App. 2019) (emphasis omitted). DCS must also provide services and "the time and opportunity to participate in programs designed to help [the parent] become an effective parent." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). The juvenile court considers the totality of the circumstances to determine whether DCS made diligent efforts. *See In re J.C.*, 259 Ariz. 60, 69 ¶ 39 (App. 2024).

**¶22**        Reasonable evidence supports the juvenile court's finding that DCS "made diligent efforts by providing an array of reunification services and had those services been successfully completed, reunification

likely would have occurred." From June 2022 through May 2025, DCS consistently offered Mother drug testing and substance abuse treatment. DCS also offered multiple psychological evaluations and provided weekly counseling sessions for more than a year over the course of the dependency. Given Mother's mental health and alcohol abuse issues, these were services designed to help her become an effective parent.

**¶23**        As to Mother's argument that DCS was required to provide family counseling, that recommendation was made after Child's first overnight visit to assist with returning Child to Mother's home. Shortly thereafter, Mother was arrested for assaulting her neighbor, and DCS stopped all unsupervised contact between Mother and Child, ending the transition plan and obviating the need for family therapy.

**¶24**        Even then, DCS still attempted to provide family counseling. The assigned therapist attended team meetings in March and April 2025 and scheduled the first therapy session for May 2025. The delay in the initial appointments resulted from Mother being unavailable to attend any of the earlier dates offered.

**¶25**        Reasonable evidence supports the court's finding that DCS provided diligent reunification services. Because we affirm the termination based on the 15-months out-of-home placement ground, this Court does not address the juvenile court's findings on chronic substance abuse grounds. *See Michael J.*, 196 Ariz. at 251 ¶ 27.

## II.    Termination Was in Child's Best Interests.

**¶26**        Mother next argues that no reasonable evidence supports the juvenile court's finding that terminating her parental rights was in Child's best interests because of the bond between Mother and Child and because Child did not want to be adopted.

**¶27**        This Court reviews a best-interests finding for an abuse of discretion and reverses only if "no reasonable evidence" supports the finding. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47 ¶ 8 (App. 2004). The juvenile court analyzes the child's best interests under the totality of the circumstances, but the primary concern is the "child's interest in stability and security." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 12 (2018) (quoting *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4 ¶ 15 (2016)). To prove termination is in a child's best interests, DCS must show either: 1) terminating will benefit the child or 2) failing to terminate will harm the child. *See id.* at ¶ 13. Evidence of an adoption plan or of the child's adoptability supports a finding the termination will benefit the child. *Id.*

**¶28** Although Mother's bond with Child is a factor in determining best interests, it is not dispositive. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98 ¶ 12 (App. 2016). The juvenile court considered their close relationship but found Child's need for permanency through adoption outweighed the bond. Reasonable evidence supports the superior court's finding.

**¶29** Mother contends no evidence supports the court's finding that placement would allow her to have a relationship with Child post-adoption. But the evidence shows that placement was willing to allow Child to have post-adoption contact with Mother and had no intention of removing Mother from his life.

**¶30** Mother also argues that DCS failed to prove adoption was likely because no evidence demonstrated Child would consent to adoption. *See Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 370–71 ¶ 22 (App. 2018) ("[W]e conclude [findings regarding adoptability or adoptive placement], to be meaningful, must reflect a finding that adoption is not only possible, but likely."). But Child was 11 years old at the time of the termination and his consent to the adoption was not required. *See* A.R.S. § 8-106(A)(3). Furthermore, the Child's guardian ad litem informed the judge that if termination occurred, Child would consent to adoption. *See* Ariz. R.P. Juv. Ct. 306(d) ("At each substantive hearing . . . the GAL must inform the court of the child's position concerning pending issues and the GAL must inform the court of what is in the child's best interests.").

**¶31** In sum, Mother asks this Court to reweigh the evidence on appeal, which this Court will not do. *See Maria G.*, 253 Ariz. at 366 ¶ 8. The juvenile court did not err in finding that termination of Mother's parental rights was in Child's best interests.

## CONCLUSION

**¶32** For the foregoing reasons, this Court affirms the termination of Mother's parental rights to Child.

